UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TINA S.[1] | : | Case No. 3:21-cv-246 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff Tina S. brings this case challenging the Social Security Administration's denial of her applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #5).

## I. Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for Disability Insurance Benefits in June 2018 and Supplemental Security Income benefits in October 2018, alleging disability due major depressive disorder, recurrent, severe. (Doc. #5, *PageID* #255.) After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since August 1, 2017, her alleged disability onset date. |
| Step 2: | | Plaintiff has the following severe impairments: depression and anxiety disorder. |
| Step 3: | | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of performing "a full range of work at all exertional levels but with the following non-exertional limitations: can perform tasks that are not at a production rate pace and without strict performance quotas; can have occasional interaction with supervisors and co-workers but no interaction with the general public; no jobs requiring teamwork or tandem tasks; can tolerate occasional changes to a routine work setting defined as 1-2 per week." |
| Step 4: | | She is unable to perform any past relevant work. |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

      Step 5:      She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 34-43). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 1, 2017. *Id.* at 43.

      The evidence of record is adequately summarized in the ALJ's decision (Doc. #5, *PageID* #s 34-43), Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), and Plaintiff's Reply (Doc. #9). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**      <u>**Standard of Review**</u>

      Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

      The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

Plaintiff contends that the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Stephanie Fitz, M.D., and in his consideration of the opinions of the state agency reviewing consultant, Mary K. Hill, Ph.D. and Paul Tangeman, Ph.D. (Doc. #6, *PageID* #s 1451-59). The Commissioner maintains that the ALJ evaluated the medical opinions consistent with the regulations and that his decision is supported by substantial evidence. (Doc. #9, *PageID* #s 1467-77).

#### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claims for disability were filed in June and October 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set

forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in his assessment of Plaintiff's treating psychiatrist, Stephanie Fitz, M.D. (Doc. #6 *PageID* #s 1451-56). Dr. Fitz and Carol Weinert, MS/LPCC, Plaintiff's treating therapist, co-authored an opinion on July 24, 2019. (Doc. #5, *PageID* #s 1312-15). Dr. Fitz diagnosed major depression, recurrent, severe, without psychosis. *Id.* at 1312. Plaintiff's symptoms include poor memory; sleep disturbance (without medication); mood disturbances; social withdrawal or isolation; emotional lability; blunt, flat, or inappropriate affect; decreased energy; anhedonia or pervasive loss of interests; intrusive recollections of a traumatic experience; generalized persistent anxiety; feelings of guilt/worthlessness; and difficulty thinking or concentrating. *Id.* Dr. Fitz opined that Plaintiff's impairments would cause her to be off task 20% or more of the workday and be absent more than three times a month. *Id.* Further, Plaintiff has moderate limitations in her ability to understand and learn terms, instructions, and procedures; describe work activity to someone else; ask and answer questions and provide explanations; and recognize a mistake and correct it. *Id.* at 1313. She has marked limitations in her ability to identify and solve problems, sequence multi-step activities, and use reason and judgment to make work-related decisions. *Id.* Plaintiff has marked to extreme limitations in her abilities to concentrate, persist, or maintain pace and to adapt or manage herself.[4] *Id.* Dr. Fitz concluded, "This client has significant difficulty with emotion regulation that significantly impact functioning." *Id.* at 1314.

---

[4] Dr. Fitz opined that Plaintiff marked to extreme limitations in all subcategories but one. She found that Plaintiff has

The ALJ was "unpersuaded" by Dr. Fitz's opinion. *Id.* at 41. He found that Dr. Fitz's opined limitations were not consistent with the other evidence in the record. Specifically, the ALJ found, "With mental status examinations, [Plaintiff] exhibit no more than moderate findings. Essentially all her mental status examination[s] indicated cognitive functioning within normal limits." *Id.* The ALJ acknowledged that Plaintiff has demonstrated abnormal mood and affect, impaired insight and judgment, and impaired concentration. However, he concluded that "[s]uch limitations would not suggest no more than moderate limitations in any of the cognitive functioning areas." *Id.* at 40-41. (citations omitted). The ALJ noted that Plaintiff lives independently, engages in the community, and cares for her needs. *Id.* at 41. Although Plaintiff reported that she does not attend to grooming and hygiene, "treatment notes do not indicate that she presents with any abnormal findings in her personal care." *Id.* Further, although she attended intensive outpatient treatment at Kettering Behavioral Medicine Center beginning on January 28, 2019, she was discharged as of April 3, 2019, due to all her goals being met. *Id.* (citation omitted).

Plaintiff asserts that the ALJ failed to consider the supportability factor. (Doc. #6, *PageID* #1453). The Commissioner maintains that, although the ALJ did not use the term "supportability," he "nonetheless discussed supportability in finding that Dr. Fitz's opinion was supported in suggesting that Plaintiff's symptoms were severe but was not supported in suggesting that her limitations were more than moderate in nature." (Doc. #8, *PageID* #1475) (citing Doc. #5, *PageID* #s 40-41). Specifically, the Commissioner argues, the ALJ discussed the symptoms identified in

---

moderate limitations in her ability to be aware of normal hazards and take appropriate precautions. (Doc. #5, *PageID* #1313-14).

Dr. Fitz's assessment when determining that Plaintiff had moderate limitations earlier in his decision. *Id.* at 1475-76.

The Commissioner's defense of the ALJ's decision falls short. The plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 416.920c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether he needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth her rationale on what are deemed to be the two most important factors—supportability and consistency. *See id.* Here, ALJ Adkins failed to explain how he considered the factor of supportability when assessing Dr. Fitz's opinion.[5]

Plaintiff also asserts that the ALJ erred in his consideration of the opinions of the State agency's non-examining consultants. (Doc. #6, *PageID* #1456). Mary K. Hill, Ph.D., and Paul Tangeman, Ph.D., reviewed Plaintiff's records in September 2018 and January 2019 respectively. (Doc. #5, *PageID* #s 88-98; 100-10). They found that she mild limitations in her ability to understand, remember, or apply information, and moderate limitations in her ability to interact

---

[5] Although the ALJ discussed the Paragraph B criteria in greater detail earlier in his decision, he does not discuss all of Dr. Fitz's opinions. For instance, Dr. Fitz opined that Plaintiff would be off task 20% or more of the workday and would be absent from work more than three times per month. The ALJ's discussion of the Paragraph B criteria do not address these opinions.

with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* at 92, 104. They opined that Plaintiff can perform one-to-three step short cycle tasks, engage in brief and superficial interactions with others in a work setting, and can adjust to typical work stress and pressures when changes are introduced gradually and with explanations. *Id.* at 94-96, 106-08.

The ALJ found their opined cognitive limitations to be "persuasive" because "they are consistent with the other evidence of record and [are] supported by the other evidence of record." *Id.* at 40. The ALJ noted that he previously found that Plaintiff had mild limitations in her ability to understand, remember, or apply information and moderate limitations in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. The ALJ indicated that he "essentially adopted all of the functional limitations …" but that "they have been modified somewhat to better address and more adequately depict [Plaintiff's] cognitive vocational limitations." *Id.*

Although the ALJ indicated he "essentially adopted" Dr. Hill and Dr. Tangeman's opinions, he did not include a limitation to brief and superficial interactions with others in Plaintiff's residual functional capacity assessment. Instead, the ALJ limited Plaintiff to occasional interaction with supervisors and co-workers, no interaction with the general public, and no teamwork or tandem tasks. *Id.* at 38. The ALJ did not explain why he modified Dr. Hill and Dr. Tangeman's opinion.

The ALJ's failure to discuss Dr. Hill and Dr. Tangeman's opined limitation is significant because there is a distinction between limiting the *quantity* of time spent with an individual with the limitation relating to the *quality* of the interactions—including a limitation to "superficial"

interaction. *See, e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to [the medical] opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) (Sargus, D.J.) (" 'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

Accordingly, ALJ Stuart's failure to explain why he rejected Dr. Hill and Dr. Tangeman's that Plaintiff be limited to brief and superficial interactions constitutes error and further supports remanding this case. *See Hurley v. Berryhill*, No. 1:17-CV-421, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (holding that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit the plaintiff to occasional rather than superficial interactions) (internal citation omitted); *Cote v. Colvin*, No. 16-cv-57, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[6]

---

[6] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to have this case remanded to the Social Security

11

Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Tina S. was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

July 25, 2022　　　　　　　　　　　　　　　　　　　*s/ Peter B. Silvain, Jr.*
　　　　　　　　　　　　　　　　　　　　　　　　　Peter B. Silvain, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).